Eastern District of Kentucky
FILED
OCT 2 4 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| ANNE RIDDLE, WILLIAM ASHCRAFT, ANNA ASHCRAFT and JOHN PAUL ASHCRAFT,  Plaintiffs, V. COMMONWEALTH OF KENTUCKY, CABINET FOR HEALTH AND FAMILY SERVICES, and BEVERLY RUBLE-RUPAREL,  Defendants. | Civil Action No. 6: 04-620-DCR  **MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration the Defendants' Motion to Dismiss the claims of William Ashcraft [Record No. 17], Anne Riddle [Record No. 24], Defendants Supplemental Motion to Dismiss All Claims [Record No. 33], and a number of procedural motions. [Record Nos. 30, 38, 39, 40, 42, 46, and 48] Because the claims against the Commonwealth of Kentucky are barred by sovereign immunity, and because Beverly Ruble-Ruparel is entitled to absolute immunity for her actions, Defendants' Supplemental Motion to Dismiss All Claims will be granted. [Record No. 33]

## I. BACKGROUND

### A. Ples Aguilar and Ellen Riddle

As to the custody situation, the Court adopts the findings of facts from Kentucky Case No. 97-J-971-001 and No. 96-J-75-004 in the Campbell County Juvenile Court, Judge Karen Thomas presiding. [Record No. 35]

On September 25, 1997, the Kentucky Cabinet for Families and Children ("CFC"), now known as the Cabinet for Health and Family Services ("CHFS"), was contacted by the Newport Police Department. On that date, Mary Beth Amend of the CFC and Detective Jerry Roy of the Newport Police Department were dispatched to the residence of Plaintiff Mildred Anne Riddle (a/k/a, Anne Riddle). Upon arriving at the home, they found Mildred Riddle (a/k/a, Ellen Riddle), age 4, crying on the front steps wearing only a dirty t-shirt. The four-year old Riddle was also complaining of hunger, saying she had not eaten in approximately 24 hours. Amend and Roy then learned that Ellen was being cared for by her 14 year old brother Ples Aguilar. Neither child was aware of the location of their mother, and neither claimed to know when she would return.

Upon viewing the living conditions, which included animal feces, garbage and debris throughout the house, the building inspector was contacted. Conditions were so poor that the officer and inspector had to apply substances under their nose to block the smell. After removing the children, the building was condemned.

The next day, Judge Thomas appointed Thomas Beiting as Guardian Ad Litem for the children, and Robert A. Arnold as attorney for Anne Riddle. Judge Thomas found Anne Riddle to be of unsound mind, and the children to be suffering from abuse and neglect. She granted temporary custody of the children to the CFC. This ruling began a lengthy legal process which

-2-

culminated in Ples Aguilar being returned to the custody of his birth father in California, and Ellen Riddle being permanently placed in foster care, after a brief stay in a psychiatric hospital. Anne Riddle's parental rights were terminated by Judge Thomas on June 22, 1999.

### B. Anna Ashcraft

On April 2, 1999, Defendant Beverly Ruble-Ruparel provided an affidavit in support of an application for an emergency protective order ("EPO") on behalf of Anna Ashcraft. The affidavit alleged that she was being endangered by her mother. [Record No. 1, 4] Upon learning that an EPO had been issued, and believing it to be a warrant for her arrest, Anne Riddle absconded. [Record No. 1] CFC took temporary custody of Anna Ashcraft, but relinquished custody to her natural father, William Ashcraft, based on an order of the Boone County Family Court. [Record No. 4]

On September 5, 2000, CFC discovered that Anna Ashcraft and her brother John Paul Ashcraft were living in sub-standards conditions, specifically, in the dirty interior of their father's personal automobile. [Record No. 1] CFC again took custody of the children, who remained under the supervision of the cabinet until the case terminated on December 11, 2003. This included time spent in foster care, from approximately September 2002 through June 2003.

## II. LEGAL STANDARD

It is settled law that a federal court must give to a state court judgment the same preclusive effect as it would have under the law of the State in which the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81 (1984). District Courts should "customarily accept the factual findings of state courts in the absence of "exceptional

circumstances." *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum*, 445 U.S. 97 (U.S. 1980) (quoting *Lloyd A. Fry Roofing Co. v. Wood*, 344 U.S. 157, 160 (1952).

It should also be noted that Federal courts are courts of limited jurisdiction; that is, they may only hear the cases and "exercise those powers authorized by [the] Constitution and statute." *Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 606 (6th Cir. 1998). A defendant who believes the prerequisites of federal subject matter jurisdiction have not been satisfied may bring these deficiencies to the Court's attention *via* a motion filed pursuant to Fed. R. Civ. P. 12(b)(1). The Court is then obligated to review the evidence before it and determine whether it enjoys jurisdiction over the claims asserted. *See, e.g., United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

Under Rule 12(b)(6), a complaint may be dismissed if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *See Cuno v. Daimler Chrysler, Inc.*, 386 F.3d 738, 742 (6th Cir. 2005); *see also Golden v. City of Columbus*, 404 F.3d 950 (6th Cir. 2005). The court must construe the complaint in the light most favorable to plaintiff accept all factual allegations as true, and determine whether it is established beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). While the standard is quite liberal, it requires more than the bare assertion of legal conclusions. *Perry v. American Tobacco Co.*, 324 F.3d 845, 848 (6th Cir.2003). Furhter, in addressing motions to dismiss, the court need not accept as true legal

conclusions or unwarranted factual inferences. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).

*Pro se* pleadings are to be liberally construed, and a *pro se* petitioner should not be held to the same standard as one trained in the law. *Haines v. Kerner*, 92 S.Ct. 594 (1974), *see also Urbina v. Thomas*, 270 F.3d 292 (6th Cir. 2001). As a result, the Court should interpret *pro se* petitions and motions as they were intended, rather than strictly as written. *Id.*

### III. ANALYSIS

The *pro se* Plaintiffs contend that they have been denied certain rights by the Defendants in violation of 42 U.S.C. §1983. They also claim they have been subjected to malicious prosecution in Campbell, Boone and Whitley Counties as "a result of the injunctions, attachments, arrest orders, removals of the children, *etc.*, were without probable cause, done with malice, and have been resolved in the favor of Plaintiffs, but have caused damage to reputation, emotional and financial harm to Plaintiffs." [Record No. 1] As a result of the Defendants' allegedly wrongful actions, they seek compensatory damages, attorney's fees, and a trial by jury.

The Defendants urge this Court to dismiss the Plaintiffs' claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. They argue that the claims against the Commonwealth are barred by sovereign immunity, and that claims against Beverly Ruble-Ruparel are barred by the doctrine of absolute immunity, or failing that, qualified immunity.

### A.  Claims against Commonwealth of Kentucky, Cabinet for Health and Family Services

The Supreme Court has held that the Eleventh Amendment prevents federal courts from exercising original jurisdiction over suits against a state by one of its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). The Supreme Court has also explicitly stated that, "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (U.S. 2002). Here, the plaintiffs have no valid cause of action against the Commonwealth of Kentucky or any of its agencies. Thus, they have failed to state a claim upon which relief can be granted and their claims against the Commonwealth of Kentucky Cabinet for Health and Family Services will be dismissed.

### B.    Claims against Beverly Ruble-Ruparel

While the Commonwealth cannot be sued under the doctrine of sovereign immunity, that same protection is not extended to Ms. Ruble-Ruparel. Indeed, the language of §1983 explicitly covers the actions of state actors operating under the cover of state law. 42 U.S.C. §1983. However, in some circumstances state actors may be entitled to immunity arising from actions committed under color of state law.

For instance, in *Sayler v. Patrick*, 874 F.2d 374 (6th Cir. 1989), the Sixth Circuit determined that "family service workers [are] absolutely immune from liability in filing the juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings." In *Sayler*, the defendants alleged that the social workers had filed a juvenile court petition without first doing adequate investigation of the claim of abuse. They argued that the filing of this petition was defamation, abuse of process, and malicious prosecution. The Court determined that these actions were sufficiently quasi-prosecutorial to merit absolute immunity.

*Id.*; *see also Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir. 1984) (state employees responsible for prosecution of child neglect and delinquency petitions entitled to absolute immunity.)

However, the Sixth Circuit has also determined that social workers are not always entitled to absolute immunity. In *Achterhof v. Selvaggio*, 886 F.2d 826 (1989), the Court held that when social workers are peforming administrative or investigative functions, they are not entitled to absolute immunity. In *Achterhof* the question was whether absolute immunity should be extended to a social worker's decision to open and pursue an investigation. The Sixth Circuit ruled that although the investigation could have led to criminal prosecution, that was an insufficient link to trigger absolute immunity. *Id.* at 830. The social worker's decision to open and pursue the investigation was more administrative in nature, especially since under Michigan law it was a duty required of him. *Id.*

This Court must determine whether the subject actions of Ms. Ruble-Ruparel were prosecutorial or investigative, in addressing whether Ms. Ruble-Ruparel is entitled to absolute immunity. Recently, in *Holloway v. Brush*, 220 F.3d 767 (2000), the Sixth Circuit attempted to clarify the distinction between those actions which are "prosecutorial" and those which are "administrative or investigative". Concluding that absolute immunity applied only when the social worker was "initiating actions or testifying under oath", the court denied absolute immunity to a social worker where she misled the birth mother and failed to inform the court of her re-appearance. *Id.* at 767-777.

Here, the actions of which plaintiffs complain are those specifically listed in *Holloway*. In Paragraph 11 of their Complaint, Plaintiffs complain that Ms. Ruble-Ruparel initiated an

action for a warrant (actually an EPO) and caused it to be issued. [Record No. 1] While this Court can find no evidence of any such proceeding in the record, in light of the standard for dismissal under Rule 12(b)(6), it will resolve this ambiguity in favor of the Plaintiffs and assume such records may have been misplaced in the state court records. Nevertheless, this action and subsequent further proceedings of which plaintiffs complain are all actions which are specifically listed quasi-prosecutorial in *Holloway*. Therefore, they are entitled to absolute immunity.

In addition, the actions of which Plaintiffs complain are all related to the CFC's treatment of or custody over Anna and John Paul Ashcraft. However, as the record conclusively demonstrates, investigations into the fitness of Anne Riddle began in 1997, before Anna Ashcraft was even born. The record contains no evidence that Ms. Ruble-Ruparel was personally involved until after the Kentucky Juvenile Courts had removed Ples Aguilar and Ellen Riddle from Anne Riddle's custody. Ms. Ruble-Ruparel was not the one who instigated the investigation into Anne Riddle's parental fitness, nor did she unreasonably continue to monitor Ms. Riddle, further distinguishing this case from the facts of *Holloway*.

Therefore, even had Ms. Ruble-Ruparel initiated an action for an EPO, given testimony which caused the state court to grant temporary custody to CFC, this action would be subject to the protections afforded by the doctrine of absolute immunity. Plaintiffs claims against Ms. Ruble-Ruparel will be dismissed for failure to state a claim upon which relief can be granted.

### IV. CONCLUSION

Accordingly, for the reasons discussed herein, it is hereby **ORDERED** as follows:

(1) Defendants' Kentucky Cabinet for Health and Family Services and Beverly Ruble-Ruparel Motions to Dismiss [Record Nos. 24 & 33] are **GRANTED**. The Defendants' additional motion to dismiss [Record No. 17] is **DENIED** as moot.

(2) The Plaintiff's motion to amend motion for continuance [Record No. 30] is **DENIED**.

(3) The Plaintiffs' motion to strike certain psycho-therapist/patient records from the record [Record No. 38] is **DENIED**. However, the parties may file these matters under seal and substitute redacted copies with the Clerk of the Court within fourteen (14) days of the entry of this Memorandum Opinion and Order.

(4) The Defendants' motion for leave to file an errata [Record No. 42] is **GRANTED**. Likewise, the Plaintiffs' motion for leave to file an errata [Record No. 46] is **GRANTED**.

(5) The Plaintiffs' motions for an extension of time [Record No. 39] is **DENIED**; however, the motion to substitute [Record No. 40] is **GRANTED**. All remaining motions are **DENIED**, as moot.

(6) All claims asserted in this action are **DISMISSED**, with prejudice.

(7) This is a **FINAL** and **APPEALABLE** Order and there is no just cause for delay. This 24th day of October, 2005.



Signed By:
*Danny C. Reeves* DCR
**United States District Judge**